U.S. DISTRICT COURT
FILED AT WHEELING,

FEB - 6 2012

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

UNITED STATES OF AMERICA, and )
THE STATE OF WEST VIRGINIA, )
)
Plaintiffs, )
)
v. ) CIVIL ACTION NO.: 5:12-CV-19
)
RG STEEL WHEELING, LLC, (formerly )
known as SEVERSTAL WHEELING, LLC, )
SEVERSTAL WHEELING, INC., and )
WHEELING PITTSBURGH STEEL CORP.), )
MOUNTAIN STATE CARBON, LLC, )
and SNA CARBON, LLC, )
)
Defendants. )

## COMPLAINT

Plaintiffs, the United States of America, by authority of the Attorney General of the

United States, on behalf of the Administrator of the United States Environmental Protection

Agency ("U.S. EPA"), and the State of West Virginia, on behalf of the West Virginia

Department of Environmental Protection ("WV DEP"), through the undersigned attorneys,

allege:

## NATURE OF ACTION

1.      This is a civil action brought against Defendants RG Steel Wheeling, LLC,

formerly known as Severstal Wheeling, LLC, also formerly known as Severstal Wheeling, Inc.,

and also formerly known as Wheeling Pittsburgh Steel Corporation ("RG Steel Wheeling"),

Mountain State Carbon, LLC ("Mountain State"), and SNA Carbon, LLC ("SNA Carbon")

(collectively, "Defendants"), pursuant to Section 113(b) of the Clean Air Act ("CAA" or "Act"),

42 U.S.C. § 7413(b), and Sections 3008(a) and 9006 of the Solid Waste Disposal Act, also known as the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6928(a) and 6991e.

In this action, the United States seeks injunctive relief and the assessment of civil penalties to address violations at one or more of the steel production facilities in Mingo Junction and Steubenville, Ohio of:

a.    Applicable provisions of the federally-approved Ohio State Implementation Plan ("SIP"), including, respectively, regulations codified at Chapters 3745-17 and 3745-18 of the Ohio Administrative Code;

b.    The permits issued pursuant to Title V of the Clean Air Act, 42 U.S.C. §§ 7661 to 7661f, by the State of Ohio authorizing Defendants to operate the Mingo Junction Facility;

c.    A Permit to Install ("PTI") issued by the State of Ohio Environmental Protection Agency ("Ohio EPA") authorizing RG Steel Wheeling's predecessor to install and operate an electric arc furnace at the Mingo Junction Facility;

d.    An Administrative Consent Order, U.S. EPA Docket 5-05-WV-113(a)-02, entered into with RG Steel Wheeling's predecessor regarding the operation of its basic oxygen furnace at the Mingo Junction Facility;

e.    Subtitle C of RCRA, 42 U.S.C. §§ 6921 *et seq.*, and the implementing regulations promulgated by the State of Ohio and authorized by EPA pursuant to RCRA Section 3006, 42 U.S.C. § 6926; and

2

      f.         Subtitle I of RCRA, 42 U.S.C. §§ 6991 *et seq.*, and the implementing regulations promulgated by the U.S. EPA.

      Further, the United States and West Virginia seek injunctive relief and the assessment of civil penalties to address violations at the coke producing facility in Follansbee, West Virginia of:

      g.        The West Virginia SIP, including Title 45, Series 7 and 10 of the West Virginia Code of State Regulations, under the authority of Section 110 of the Clean Air Act, 42 U.S.C. § 7410;

      h.        The permits issued pursuant to Title V of the Clean Air Act, 42 U.S.C. §§ 7661 to 7661f, by the State of West Virginia authorizing Defendants to operate the Follansbee Facility;

      i.         Subtitle C of RCRA, 42 U.S.C. §§ 6921 *et seq.*, and the implementing regulations promulgated by the State of West Virginia and authorized by EPA pursuant to RCRA Section 3006, 42 U.S.C. § 6926; and

      j.         Subtitle I of RCRA, 42 U.S.C. § 6991 *et seq.*, and the implementing regulations promulgated by the State of West Virginia and authorized by EPA pursuant to RCRA Section 9004, 42 U.S.C. § 6991c.

## JURISDICTION AND VENUE

      2.      This Court has jurisdiction over the subject matter of this action pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), RCRA Sections 3008(a) and 9006, 42 U.S.C. § 6928(a) and 6991e(a), and 28 U.S.C. §§ 1331, 1345 and 1355.

3.      Venue is proper in this district pursuant to CAA Section 113(b), 42 U.S.C.

§ 7413(b), RCRA Sections 3008(a)(1) and 9006(a)(1), 42 U.S.C. § 6928(a)(1) and 6991e(a)(1),

and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because Defendants reside in this district in that

Defendants Mountain State, RG Steel Wheeling and SNA Carbon own the Follansbee coke oven

facility in this district, and Defendant RG Steel Wheeling does business in this district by

operating the Follansbee coke oven facility.  In addition, some of the alleged violations and a

substantial part of the events giving rise to the claims occurred in this district.

### NOTICES

4.      In accordance with CAA Section 113(a)(1) and (b)(1), 42 U.S.C. § 7413(a)(1)

and (b)(1), on June 14, 2006, U.S. EPA issued to RG Steel Wheeling, then known as Wheeling

Pittsburgh Steel Corporation, a Notice of Violation and Finding of Violation ("NOV/FOV"),

Docket No. EPA-5-06-WV-09, for some of the violations of the CAA alleged herein arising at

the Steubenville and Mingo Junction Facilities and provided a copy at that time to the State of

Ohio.  On May 26, 2009, U.S. EPA issued to RG Steel Wheeling, then known as Severstal

Wheeling, Inc., an additional NOV/FOV, Docket No. EPA-5-09-WV-13, for some of the

violations of the CAA alleged herein arising at the Steubenville and Mingo Junction Facilities

and provided a copy at that time to the State of Ohio.

5.      In accordance with CAA Section 113(a)(1) and (b)(1), 42 U.S.C. § 7413(a)(1) and (b)(1), on April 21, 2010, U.S. EPA issued to Mountain State Carbon and RG Steel Wheeling, then known as Severstal Wheeling, Inc., a NOV/FOV in Docket No. CAA-III-10-005 for the violations of the CAA alleged herein arising at the Follansbee Facility and at that time provided a copy of the NOV/FOV to the State of West Virginia.

6.      In accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), the United States has provided notice of the commencement of this action to the Ohio Environmental Protection Agency and the West Virginia Department of Environmental Protection.

7.      In accordance with RCRA Sections 3008(a)(2) and 9006(a)(2), 42 U.S.C. §§ 6928(a)(2) and 6991c(a)(2), U.S. EPA, has provided notice of the RCRA violations alleged in this Complaint and the commencement of this action to the States of Ohio and West Virginia.

## AUTHORITY

8.      Authority to bring this action is vested in the Attorney General of the United States pursuant to CAA Sections 113(b) and 305, 42 U.S.C. §§ 7413(b) and 7605, RCRA Sections 3008(a) and 9006(a), 42 U.S.C. §§ 6928(a) and 6991e(a), and 28 U.S.C. §§ 516 and 519.

## DEFENDANTS

9.      Defendant RG Steel Wheeling, formerly known as Severstal Wheeling, LLC, also formerly known as Severstal Wheeling, Inc., and also formerly known as Wheeling Pittsburgh Steel Corporation, is a limited liability company which was organized under the laws of the State of Delaware in March 2011.  As successor through a series of name changes, RG Steel Wheeling is liable for the violations alleged herein of Severstal Wheeling, LLC, Severstal Wheeling, Inc.

and Wheeling Pittsburgh Steel Corporation. RG Steel Wheeling is a wholly-owned subsidiary of

RG Steel, LLC, a Delaware limited liability company, which is a wholly-owned subsidiary of

The Renco Group, Inc., a New York holding company. RG Steel Wheeling is registered to do

business in the States of Ohio and West Virginia. RG Steel Wheeling is an integrated steel

producer of coiled, hot-rolled and low-carbon sheet steel. RG Steel Wheeling owns and operates

the steel production facilities at issue in this case located in Steubenville and Mingo Junction,

Ohio. In addition, RG Steel Wheeling operates the coke production facility at issue in this case

located in Follansbee, West Virginia, and owns half of Mountain State Carbon, LLC, as part of a

joint venture with SNA Carbon, LLC. RG Steel Wheeling is a "person" within the meaning of

CAA Section 302(e), 42 U.S.C. § 7602(e), and RCRA Sections 1004(15) and 9001(1)(B)(5), 42

U.S.C. §§ 6903(15) and 6991(1)(B)(5).

      10.    Defendant Mountain State Carbon is a Delaware limited liability company and is

registered to do business in the State of West Virginia. Its principal place of business is in

Wheeling, West Virginia. Mountain State Carbon is a joint venture between SNA Carbon, LLC

and RG Steel Wheeling, LLC. Mountain State owns and/or operates the coke production facility

at issue in this case located in Follansbee, West Virginia, at which coke and coke oven gas has

been generated and from which such coke and coke oven gas has been transported to, among

other places, the steel production facilities in Steubenville and Mingo Junction, Ohio. Mountain

State is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e), and RCRA

Sections 1004(15) and 9001(1)(B)(5), 42 U.S.C. §§ 6903(15) and 6991(1)(B)(5).

      11.    Defendant SNA Carbon is a limited liability company organized under the laws of

the State of Delaware. SNA Carbon is a wholly-owned subsidiary of Severstal Dearborn, Inc.

SNA Carbon owns half of Mountain State Carbon, LLC, as part of a joint venture with RG Steel Wheeling, LLC. SNA Carbon is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e), and RCRA Sections 1004(15) and 9001(1)(B)(5), 42 U.S.C. §§ 6903(15) and 6991(1)(B)(5).

## DEFENDANTS' FACILITIES

12.     Mountain State owns, and RG Steel Wheeling operates, a coking facility situated on over 600 acres along the Ohio River in Follansbee, Brooke County, West Virginia (the "Follansbee Facility"). Directly across the Ohio River from the Follansbee Facility, RG Steel Wheeling owns and operates a steel production facility at South Third Street, Steubenville, Jefferson County, Ohio (the "Steubenville Facility"). South of the Steubenville Facility, RG Steel Wheeling owns and operates an integrated steel production facility at McLister Drive, Mingo Junction, Jefferson County, Ohio (the "Mingo Junction Facility"). Historically, these three facilities were operated as a single integrated primary steel production entity, often referred to as Steubenville North (the Steubenville Facility), Steubenville East (the Follansbee Facility) and Steubenville South (the Mingo Junction Facility). Where operations at issue in this Complaint involve all three facilities, the Steubenville, Mingo Junction and Follansbee Facilities are referred to collectively herein as the "Steubenville Complex."

13.     The Follansbee Facility produces metallurgical grade coke, which is used in the production of steel, by heating coal in the absence of oxygen. Coal is "charged" in a battery of ovens that are sealed and heated for many hours. The resulting coke is then "pushed" out of the ovens. Volatilized by-products driven off during the coking process are drawn and aggregated into a single "collector main" pipe that leads to a series of by-product recovery units. Coke oven

7

gas that is largely free of these by-products is then transported by pipeline throughout the Steubenville Complex for use as a combustion fuel.  Historically, the Follansbee Facility shipped coke across the Ohio River by railroad to various furnaces at the Steubenville and Mingo Junction Facilities to produce iron and steel, which was then transported down river to finishing facilities at Martin's Ferry and Yorktown, Ohio.

14.   RG Steel Wheeling halted production operations at the Steubenville and Mingo Junction Facilities in August 2008.  Although coke is no longer transported from the Follansbee Facility to the Steubenville or Mingo Junction Facilities, coke oven gas continues to be transported by pipeline from the coke ovens at the Follansbee Facility throughout the Steubenville Complex.

15.   The Follansbee Facility contains, among other air emission sources, coke oven batteries Nos. 1, 2, 3 and 8, and their related combustion stacks.  The Mingo Junction Facility contains, among other air emission sources, a basic oxygen furnace ("BOF") with associated cast houses, a scrubber to control air emissions from the BOF vessels, and an electric arc furnace ("EAF").  The Steubenville Facility contains no air emission sources at issue in this Complaint.

16.   The coking process generates large quantities of volatile gases that are collected from the coke ovens at the Follansbee Facility and sent to a By-Products Plant where they are cooled by being sprayed with large quantities of "flushing liquor" and otherwise refined.  The remaining coke oven gas is then transported by pipeline throughout the Steubenville Complex where it is used as a fuel source.  As coke oven gas flows through the pipelines, it continues to cool, forming condensate that is comprised of water vapor, benzene and other coke oven gas constituents.

17.     The coke oven gas condensate is collected in various locations, including: (a) drain lines under coke oven batteries 1, 2 and 3 (sometimes referred to as the "old block gas drips") and (b) above-ground and underground "drip leg" storage tanks.  Coke oven gas condensate from the old block gas drips drains into an underground concrete tank at the Follansbee Facility, known as the Pit Sump, where it is pumped into the Tar Decanter Sump before being added to the flushing liquor in the By-Products Plant.  Coke oven gas condensate from the drip legs located throughout the Steubenville Complex is collected by tanker truck and pumped into an open concrete trench at the Follansbee Facility that drains into the Pit Sump.

18.     The Follansbee Facility contains or has contained, among other storage units for waste collection, an above-ground tank that previously held and/or currently holds muck oil, and a laydown yard where roll-off trailers containing assorted wastes are stored.

## STATUTORY AND REGULATORY BACKGROUND

### I.     The Clean Air Act

19.     The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

#### A.     The National Ambient Air Quality Standards

20.     Section 109(a) of the Act, 42 U.S.C. § 7409(a), requires the Administrator of U.S. EPA to publish and maintain primary and secondary national ambient air quality standards ("NAAQS") for certain criteria air pollutants.  The primary NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in

9

the ambient air.  42 U.S.C. § 7409(b).  The NAAQS promulgated by U.S. EPA pursuant to this provision are set forth in 40 C.F.R. Part 50.

21.     Section 107(d) of the Act, 42 U.S.C. § 7407(d), requires each state to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. Those designations have been approved by U.S. EPA and are located at 40 C.F.R. Part 81.  An area that meets the NAAQS for a particular pollutant is an "attainment" area; one that does not is classified as a "nonattainment" area.  42 U.S.C. § 7407(d)(1).

22.     Sulfur dioxide ("$SO_2$") and particulate matter ("PM") are "air pollutants" within the meaning of CAA Sections 108 and 302, 42 U.S.C. §§ 7408 and 7602.  PM is measured in the ambient air as particulate matter of a diameter of 10 micrometers or less ("$PM_{10}$") and particulate matter of a diameter of 2.5 micrometers or less ("$PM_{2.5}$").  42 U.S.C. § 7602(t); 40 C.F.R. § 50.6 and .7.  In accordance with CAA Section 109(a) and (b), U.S. EPA promulgated regulations establishing NAAQS for $SO_2$ and PM, which are codified at 40 C.F.R. § 50.4 through .7.

23.     Jefferson County, Ohio, where the Steubenville and Mingo Junction Facilities are located, and Brooke County, West Virginia, where the Follansbee Facility is located, are both classified as attainment areas for $SO_2$ and $PM_{10}$, but have been designated as nonattainment areas for $PM_{2.5}$.

**B.     State Implementation Plans ("SIPs")**

24.     Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to U.S. EPA for approval a State Implementation Plan ("SIP") that provides for the implementation, maintenance and enforcement of the NAAQS established under CAA Section

10

109. Section 110(a)(2)(A) of the Act, 42 U.S.C. § 7410(a)(2)(A), requires that each SIP include enforceable emission limitations.

25.     After a SIP or a revision to a SIP has been approved by U.S. EPA, the provisions of the SIP or the SIP revision constitute the state's "applicable implementation plan," within the meaning of CAA Sections 113 and 302(q), 42 U.S.C. §§ 7413 and 7602(q), and those approved provisions are federally enforceable under CAA Section 113(a) and (b), 42 U.S.C. § 7413(a) and (b).

26.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, the State of Ohio adopted and submitted to U.S. EPA various rules for the attainment and maintenance of the NAAQS. U.S. EPA first approved the Ohio SIP in 1972. 37 Fed. Reg. 10842, 10886 (May 31, 1972). The Ohio SIP has been periodically revised and all of the regulations U.S. EPA approved as part of the applicable implementation plan for the State of Ohio are hereafter referred to as the "Ohio SIP Rules." *See* 40 C.F.R. Part 52, Subpart KK.

27.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, the State of West Virginia adopted and submitted to U.S. EPA various rules for the attainment and maintenance of the NAAQS. U.S. EPA first approved the West Virginia SIP in 1972. 37 Fed. Reg. 10842, 10902 (May 31, 1972). The West Virginia SIP has been periodically revised and all of the regulations U.S. EPA approved as part of the applicable implementation plan for the State of West Virginia are hereafter referred to as the "West Virginia SIP Rules." *See* 40 C.F.R. Part 52, Subpart XX.

### 1.     Particulate Matter Provisions of the Ohio and West Virginia SIPs

28.     U.S. EPA approved Ohio Administrative Code ("OAC") Chapter 3745-17, regulating particulate matter emissions, as part of the Ohio SIP Rules, effective June 27, 1994.

11

59 Fed. Reg. 27464 (May 27, 1994). OAC Rule 3745-17-07(A) requires that visible particulate emissions from any stack not exceed 20 percent opacity on a six-minute average basis, except that emissions may exceed this limit for not more than six consecutive minutes in any 60-minute period, provided that the source shall not exceed 60 percent opacity at any time.

29.     The Steubenville and Mingo Junction Facilities are subject to the Ohio SIP Rules governing particulate matter emissions from stationary sources including, without limitation, OAC Rule 3745-17-07.

30.     U.S. EPA approved West Virginia Code of State Regulations ("WV CSR") § 45-7-3, regulating the emission of smoke and/or particulate matter, as part of the West Virginia SIP Rules, effective June 3, 2003. 68 Fed. Reg. 33,010 (June 3, 2003). WV CSR § 45-7-3.1 prohibits the emission of smoke or particulate matter from any process source operation in excess of 20 percent opacity for any period or periods aggregating more than five (5) minutes in any sixty (60) minute period, provided that the source not exceed 40 percent opacity at any time.

31.     Defendants' Follansbee Facility is subject to the West Virginia SIP Rules governing emissions from stationary sources including, but not limited to, WV CSR § 45-7-3.

### 2.     Sulfur Dioxide Provisions of the Ohio and West Virginia SIP Rules

32.     U.S. EPA also approved, as part of the Ohio SIP Rules, OAC Rule 3745-18-47, which establishes sulfur dioxide emission limits for facility owners and operators in Jefferson County, Ohio. Because sulfur dioxide is emitted when hydrogen sulfide is combusted, the Ohio SIP Rules limit the combustion, in Jefferson County, Ohio, of coke oven gas containing more than fifty grains of hydrogen sulfide per one hundred dry standard cubic feet ("dscf") of coke oven gas. OAC Rule 3745-18-47(c).

12

33.    The Steubenville and Mingo Junction Facilities are subject to the Ohio SIP Rules governing the combustion of coke oven gas containing hydrogen sulfide including, but not limited to, OAC Rule 3745-18-47(c).

34.    U.S. EPA also approved, as part of the West Virginia SIP Rules, WV CSR § 45-10-5, which establishes sulfur dioxide emission limits for combustion of process stream gas. Because sulfur dioxide is emitted when hydrogen sulfide is combusted, the West Virginia SIP Rules limit the combustion of coke oven gas containing more than fifty grains of hydrogen sulfide per one hundred cubic feet of coke oven gas, with limited exceptions for maintenance periods.  WV CSR § 45-10-5.1.

35.    Defendants' Follansbee Facility is subject to the West Virginia SIP Rules governing the combustion of coke oven gas containing hydrogen sulfide including, but not limited to, WV CSR § 45-10-5.1.

**C.    Title V Operating Permits**

36.    Title V of the Act, CAA Sections 501-507, 42 U.S.C. §§ 7661 to 7661f, establishes an operating permit program for certain emission sources, including "major sources." The Steubenville Complex consists of "major sources" as that term is defined in CAA Section 501(2), 42 U.S.C. § 7661(2), because each of the three facilities comprising that complex are stationary sources that have the potential to emit 100 tons per year or more of sulfur dioxide or particulate matter.

37.    Pursuant to CAA Section 502(a), 42 U.S.C. § 7661a(b), on July 21, 1992, U.S. EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a major source operating permit program to be administered by any air

pollution control agency.  57 Fed. Reg. 32250 (July 21, 1992).  These regulations are codified at 40 C.F.R. Part 70.

38.     Pursuant to 40 C.F.R. Part 70, U.S. EPA granted final approval to Ohio's Title V operating permit program, effective October 1, 1995.  60 Fed. Reg. 42,045 (Aug. 15, 1995).  Ohio's Title V operating permit program is currently codified in the Ohio Administrative Code at OAC Chapter 3745-77.

39.     Pursuant to 40 C.F.R. Part 70, U.S. EPA granted final approval to West Virginia's Title V operating permit program, effective December 15, 1995. 60 Fed. Reg. 57,352 (Nov. 15, 1995).  West Virginia's Title V operating permit program is currently codified in the West Virginia Code of State Regulations at WV CSR § 45-30-1 *et seq.*

40.     Pursuant to CAA Section 502(a), 42 U.S.C. § 7661a(a), the federal Title V regulations, 40 C.F.R. § 70.1(b) and .6(a), the Ohio Title V operating permit program regulations, OAC Rule 3745-77-02(A), and the West Virginia Title V operating permit program regulations, WV CSR § 45-30-3.1, have at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

41.     Pursuant to CAA Section 504(a), 42 U.S.C. § 7661c(a), the federal implementing regulations of the Act, 40 C.F.R. Part 70, the Ohio Title V operating permit program regulations, OAC Rule 3745-77-07, and the West Virginia Title V operating permit program regulations, WV CSR § 45-30-5.1.a, have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to

14

assure compliance with applicable requirements of the Clean Air Act and the requirements of the applicable SIP.

42.     In accordance with CAA Section 113(b), 42 U.S.C. § 7613(b), operating permits issued under an approved program are federally enforceable.

### 1.     The Title V Permit for the Steubenville and Mingo Junction Facilities

43.     In accordance with its authority under Title V of the Act, Ohio EPA issued RG Steel Wheeling a Class I Operating Permit, 06-41-09-0010 ("Ohio Operating Permit"), on January 22, 2004, authorizing the operation of emission sources at the Steubenville and Mingo Junction Facilities.

44.     The Ohio Operating Permit, at Part III, Unit P904, Section A.I.1, prohibits visible particulate emissions from the scrubber stack serving the BOF Shop of greater than 20 percent opacity on a six-minute average, except that visible particulate emissions may exceed twenty percent opacity for not more than six consecutive minutes in a sixty-minute period, but shall not exceed sixty percent opacity, as a six-minute average, at any time.  This provision also prohibits fugitive dust from the BOF of greater than 20 percent opacity on a three-minute average.

45.     The Ohio Operating Permit, at Part III, Unit P904, Section A.III.6, requires RG Steel Wheeling to conduct or have conducted (by qualified, certified observers) visible emissions readings for the scrubber stack serving the BOF Shop and the roof monitor for fugitive dust emissions from the BOF Shop.  RG Steel Wheeling must perform these readings for a minimum of four consecutive heats per week.

46.     The Ohio Operating Permit, at Part II.A.1, requires the operation and maintenance of the coke oven gas desulfurization system in a manner that will prevent the combustion of coke

oven gas that contains $H_2S$ in excess of 50 grains per 100 dscf, based on a 12-hour block average determined at noon and midnight.  RG Steel Wheeling must continuously monitor the concentration of $H_2S$ in the coke oven gas produced at the Follansbee Facility and report each 12-hour block average concentration as determined at noon and at midnight each day. *See Ohio Operating Permit*, at Part II.A.2-4.

### 2.    The Title V Permit for the Follansbee Facility

47.    Pursuant to its authority under Title V of the Act, the WV DEP issued Mountain State a Class I Operating Permit, R30-00900002-2004, on December 17, 2004, for the operation of emission sources at Mountain State's Follansbee Facility.  WV DEP renewed this permit, effective January 19, 2010, upon issuance of Permit to Operate R30-00900002-2010.  For purposes of the Claims set forth in this Complaint, the relevant terms of the 2004 Operating Permit and the 2010 Permit to Operate are the same and are referred to as the "WV Operating Permit."

48.    The WV Operating Permit prohibits the emission of particulate matter into the open air from any process source operation which is greater than twenty percent opacity, except for emission of particulate matter of less than forty percent opacity for any period or periods aggregating no more than five minutes in any sixty minute period.

49.    The WV Operating Permit prohibits the combustion of any process gas stream that contains $H_2S$ in excess of 50 grains per 100 cubic feet of gas, based on a three-hour block average, with limited exceptions for periods of planned maintenance.

16

**D.**   **2003 Permit to Install Electric Arc Furnace at Mingo Junction**

50.    Pursuant to CAA Section 110, 42 U.S.C. § 7410, on October 31, 1980, U.S. EPA approved OAC Chapter 3745-31 as part of the federally enforceable SIP for Ohio. *See* 45 Fed. Reg. 72119. Since then, U.S. EPA has approved several revisions to OAC Chapter 3745-31 which regulates Permits to Install ("PTI") new or modified sources of air pollutants. OAC Chapter 3745-31 was substantially revised and approved as a revision to the Ohio SIP on September 8, 1993. *See* 58 Fed. Reg. 47211.

51.    OAC Rule 3745-31-02(A) states that no person shall cause, permit or allow the installation of a new source of air pollutants or allow the modification of an air contaminant source without first obtaining a Permit to Install the new source from the director of the Ohio EPA.

52.    On August 27, 2003, Ohio EPA issued Permit to Install No. 06-07034 which authorized RG Steel Wheeling, then known as Wheeling Pittsburgh Steel Corporation, to operate an Electric Arc Furnace ("EAF") at the Mingo Junction Facility in accordance with the requirements of the Ohio SIP rules. The PTI established restrictions on emissions from the EAF, including "0 percent opacity from the EAF meltshop." PTI, Part III, A.I.2.a.ii.

**E.**   **2004 Administrative Consent Order**

53.    Pursuant to proceedings under CAA Sections 113(a)(1) and 114(a)(1), 42 U.S.C. §§ 7413(a)(1) and 7414(a)(1), RG Steel Wheeling, then known as Wheeling Pittsburgh Steel Corporation, agreed to an Administrative Consent Order ("ACO"), U.S. EPA Docket 5-04-WV-113(a)-02, effective August 6, 2004. The ACO sought to improve compliance with the Ohio SIP Rules' opacity limits applicable to the Mingo Junction Facility's BOF Shop and BOF Shop

17

scrubber stack by mandating certain work practices designed to lower or eliminate particulate matter emissions.

54. Among the work practices mandated by the ACO were those designed to prevent the Mingo Junction Facility from exceeding applicable opacity limits caused by rapid charging of the BOF vessel. Specifically, Paragraphs 18 and 19 of the ACO mandate that within 3 months after the ACO becomes effective *(i.e.,* by November 6, 2004): (i) "the duration of the initial hot metal charge of each heat into a BOF vessel shall not be less than 3 minutes;" and (ii) RG Steel Wheeling "shall monitor and record the duration of each hot metal charge" and report to U.S. EPA "the dates and times during each respective quarter that the duration of the initial hot metal charge of each heat was less than 3 minutes."

55. Violation of the ACO subjects RG Steel Wheeling to civil penalties of up to $32,500 per day for each violation.

### F.    Enforcement Provisions of the Clean Air Act

56. Pursuant to CAA Section 113(a)(1) and (3), 42 U.S.C. § 7413(a)(1) and (3), U.S. EPA may bring a civil action in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), whenever U.S. EPA finds that any person has violated or is in violation of any requirement or prohibition of an applicable SIP or Title V permit.

57. Failure to comply with any approved regulatory provision of 40 C.F.R. Part 52 or any approved regulatory provision of a SIP renders the person so failing to comply in violation of a requirement of an applicable SIP and subject to enforcement action under CAA Section 113(b), 42 U.S.C. § 7413(b). 40 C.F.R. § 52.23.

58.     Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), the United States is authorized to commence a civil action for injunctive relief and assessment of civil penalties whenever a person has violated or is in violation of any requirement or prohibition of the CAA, any applicable SIP, or any permit issued pursuant to Title V of the Act, including a PTI. Pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. Part 19, Violators are subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009, and $37,500 per day for each such violation occurring on or after January 13, 2009.  Pursuant to CAA Section 113(e), 42 U.S.C. § 7413(e), upon a prima facie showing that the conduct giving rise to the violations are likely to have continued or recurred, the days of violation are presumed to be continuing.

**G.     Enforcement Provisions of the West Virginia Air Pollution Control Act**

59.     The West Virginia Air Pollution Control Act, W.Va. Code §§ 22-5-1 *et seq.* ("WV APCA"), provides a coordinated statewide program of air pollution prevention, abatement and control.  Pursuant to W.Va. Code § 22-5-3, it is unlawful for any person to cause statutory air pollution, violate the provisions of the WV APCA, violate any rules promulgated pursuant to the WV APCA, or to operate any facility subject to the permit requirements of the WV DEP without a valid permit.

60.     Pursuant to W.Va. Code § 22-5-4(a), the Director of the WV DEP is authorized to consider complaints against persons violating the WV APCA.  Pursuant to W.Va. Code §§ 22-5-6(a) and 22-5-7, the Director of the WV DEP is authorized to commence a civil action for injunctive relief and the assessment of civil penalties whenever a person violates any

provision of the WV APCA, or any permit or any rule or order issued pursuant to the WV

APCA.  Violators are subject to civil penalties of up to $10,000 per day for each violation.

W.Va. Code §§ 22-5-6(a).

## II.    The Resource Conservation and Recovery Act

61.    The Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et*

*seq.*, establishes, *inter alia*, comprehensive regulatory programs for generators of solid and

hazardous waste and for owners and operators of underground storage tanks that contain

regulated substances.  Pursuant to RCRA, U.S. EPA has promulgated regulations applicable to

such generators and such underground storage tanks, set forth at 40 C.F.R. Parts 260-282.

### A.    RCRA Subtitle C:  Hazardous Waste Management

62.    RCRA Subtitle C (RCRA §§ 3001-3023, 42 U.S.C. §§ 6921-6939f, also known as

"Subchapter III") requires U.S. EPA to promulgate regulations establishing performance

standards applicable to the generation, transportation, treatment, storage, and/or disposal of

hazardous wastes.  Together, RCRA Subtitle C and the Subtitle's implementing regulations, set

forth at 40 C.F.R. Parts 260-279, comprise U.S. EPA's RCRA hazardous waste program.

63.    Pursuant to RCRA Section 3006, 42 U.S.C. § 6926(b), States may be authorized

by U.S. EPA to administer and enforce their own hazardous waste management programs in lieu

of the federal program.  To be approved, the state requirements must satisfy certain standards and

provide adequate enforcement authority.  40 C.F.R. Part 271.

64.    Effective May 29, 1986, U.S. EPA authorized the State of West Virginia to

administer and enforce its own hazardous waste management program under RCRA.  51 Fed.

Reg. 17,739 (May 15, 1986).  West Virginia's program was revised and reauthorized effective

December 15, 2003.  68 Fed. Reg. 59,542 (Oct. 16, 2003).  West Virginia implements its authorized hazardous waste program under the West Virginia Hazardous Waste Management Act, W.Va. Code §§ 22-18-1 *et seq.* ("WV HWMA"), as well as various other sections within Title 22 of the West Virginia Code and Chapter 33, Series 20 of the West Virginia Code of State Regulations.

      65.    Effective June 30, 1989, U.S. EPA authorized the State of Ohio to administer and enforce its own hazardous waste management program under RCRA.  54 Fed. Reg. 27,170 (June 28, 1989).  The state regulations with which Ohio implements its authorized hazardous waste program are codified in various sections within Chapter 3745 of the Ohio Revised Code and Chapter 3745 of the OAC.

      66.    Under the U.S. EPA-authorized hazardous waste programs of Ohio and West Virginia, generators of hazardous waste are subject to certain hazardous waste management standards, including the requirements that they:

      a.    Determine whether generated wastes are hazardous, OAC Rule 3745-52-11; WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.11);

      b.    Obtain a permit or interim status to operate a hazardous waste management facility if hazardous waste generated on site will be treated or stored on site for greater than a specified number of days (90, 180 or 270 days, depending on the circumstances), OAC Rule 3745-52-34; WV CSR §§ 33-20-5.1, 33-20-11.1 (incorporating by reference 40 C.F.R. §§ 262.34, 270.1(b));

      c.    Provide secondary containment for tanks that store hazardous waste, OAC Rule 3745-66-93; WV CSR § 33-20-7.2 (incorporating by reference at 40 C.F.R. § 265.193);

      d.      Obtain assessments of each tank that stores hazardous waste from a certified, independent professional engineer, OAC Rule 3745-66-91; WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.191);

      e.      Equip each tank that stores hazardous waste with a leak detection system, OAC Rule 3745-66-93; WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.193);

      f.      Perform leak detection on each tank that stores hazardous waste, OAC Rule 3745-66-95; WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.195);

      g.      Maintain and operate a facility so as to minimize the possibility of any unplanned sudden or non-sudden release of hazardous waste or hazardous waste constituents, OAC Rule 3745-65-31; WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.31);

      h.      Conduct and document records of daily tank inspections of all tanks that store hazardous waste, OAC Rule 3745-66-95; WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.195);

      i.      Prepare manifests for any transportation of hazardous waste for offsite treatment, storage or disposal, at OAC Rule 3745-52-20; WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.20); and

      j.      Prepare a written closure plan and a detailed written estimate of the cost of closing the facility and document sufficient financial assurance for any closure, OAC Rules 3745-66-12, 3745-66-42, 3745-66-43 and 3745-66-97; WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.112, .142, .143 and .197).

**B.**   **RCRA Subtitle I: Underground Storage Tank Regulations**

67.   RCRA Subtitle I (RCRA §§ 9001 *et seq.*, 42 U.S.C. §§ 6991-6991m, also known as "Subchapter IX") requires U.S. EPA to promulgate release detection, prevention, and correction regulations applicable to all owners and operators of underground storage tanks, as may be necessary to protect human health and the environment.  Together, RCRA Subtitle I and the Subtitle's implementing regulations, set forth at 40 C.F.R. Parts 280-282, comprise U.S. EPA's RCRA underground storage tank program.

68.   Pursuant to RCRA Section 9004, 42 U.S.C. § 6991c, States may be authorized by U.S. EPA to administer and enforce their own underground storage tank program.  Effective February 10, 1998, U.S. EPA authorized the State of West Virginia to administer and enforce its own underground storage tank program under RCRA in lieu of the federal program.  63 Fed. Reg. 6,667 (Sept. 23, 1997); 40 C.F.R. § 282.98.  The West Virginia regulations governing the construction, installation, upgrading, use, maintenance, testing, and closure of underground storage tanks incorporate the federal regulations by reference, with limited exceptions not relevant to the Claims in this Complaint.  WV CSR § 33-30-2.1.  U.S. EPA has not authorized the State of Ohio to administer and enforce its own underground storage tank program.

69.   U.S. EPA's and West Virginia's regulations specify that owners and operators of underground tanks that contain regulated substances are subject to certain requirements, including the following:

a.   Existing hazardous substance UST systems, and any new hazardous substance UST systems must have internal liners or be equipped with cathodic protection, WV CSR § 33-30-2.1; 40 C.F.R. § 280.20(a) and 21(b);

23

b.    Existing UST systems, and any new UST systems, must have a method or combination of methods of release detection monitoring, WV CSR § 33-30-2.1; 40 C.F.R. § 280.40(a) and (c);

c.    Underground piping that routinely conveys regulated substances under pressure must have an automatic line leak detection system, WV CSR § 33-30-2.1; 40 C.F.R. § 280.42(a) and (b)(4).

d.    Underground piping that conveys regulated substances must be equipped with secondary containment, WV CSR § 33-30-2.1; 40 C.F.R. § 280.42(a) and (b)(4).

e.    Hazardous substance UST systems must have secondary containment systems designed, constructed and installed to contain any regulated substances released from the tank system until detected and removed, must prevent the migration of regulated substances into the environment at any time during the operational life of the tank, and must be checked for evidence of a release of regulated substances every thirty days, WV CSR § 33-30-2.1, 40 C.F.R. § 280.42; and

f.    Transfer operations from the hazardous substance USTs must be monitored so as to avoid spilling and must report, investigate and clean up any such spills,  WV CSR § 33-30-2.1; 40 C.F.R. § 280.30.

C.    **Enforcement Provisions of the Resource Conservation and Recovery Act**

70.    Pursuant to RCRA Sections 3008 and 9006, U.S. EPA has jurisdiction to enforce the provisions of the federal and authorized State programs.  42 U.S.C. §§ 6928(a) and 6991e. U.S. EPA is enforcing Ohio's and West Virginia's hazardous waste management requirements,

and West Virginia's underground storage tank requirements as approved and authorized by U.S. EPA.

71.     Pursuant to RCRA Sections 3008(a) and 9006, 42 U.S.C. §§ 6928(a) and 6991e, U.S. EPA may bring a civil action for injunctive relief and/or civil penalties if the Administrator determines that a person has violated or is in violation of, respectively, RCRA Subtitle C or I.

72.     Pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. Part 19, and its implementing regulations, any person who violates Subtitle C shall be liable to the United States for a civil penalty in an amount of up to $32,500 for each day of such violation occurring after March 15, 2004 and before January 13, 2009, and in an amount of up to $37,500 for each day of violation occurring on or after January 13, 2009.  40 C.F. R. § 19.4.

73.     Pursuant to Section 9006(d) of RCRA, 42 U.S.C. § 6991e(d), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. Part 19, and its implementing regulations, any person who violates Subtitle I shall be liable to the United States for a civil penalty in an amount of up to $11,000 for each tank for each day of such violation occurring after March 15, 2004 and before January 13, 2009, and in an amount of up to $16,000 for each tank for each day of violation occurring on or after January 13, 2009.  40 C.F. R. § 19.4.

**D.  Enforcement Provisions of the WV Hazardous Waste Management Act**

74.     Pursuant to W.Va. Code § 22-18-8(a), no person may own, construct, modify, operate, or close any facility or site for the treatment, storage, or disposal of hazardous waste identified or listed under the WV HWMA, or store, treat, or dispose of any such hazardous waste without first obtaining a permit from WV DEP for such facility, site, or activity.

75.     Pursuant to W.Va. Code § 22-18-8(e), any person undertaking, without a permit, any of the activities for which a permit is required, or any person violating any term or condition under which a permit has been issued is subject to the enforcement procedures of the WV HWMA.

76.     Pursuant to W.Va. Code §§ 22-18-15(a) and 22-18-17, the Director of the WV DEP is authorized to bring a civil action for injunctive relief and assessment of civil penalties whenever a person violates any provision of the WV HWMA.  Violators are subject to civil penalties of up to $7,500 per day for each violation.  W.Va. Code §§ 22-18-17(a).

## FIRST CLAIM FOR RELIEF

Against Defendant RG Steel Wheeling, LLC
(Particulate Emission Violations at BOF Shop, Mingo Junction Facility)

77.     Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

78.     On numerous occasions between July 2004 and August 2008, including but not limited to those dates and times listed in Appendix A, visible particulate emissions of fugitive dust from the Basic Oxygen Furnace Shop at the Mingo Junction Facility exceeded twenty percent opacity on a three-minute block average.

26

79.     By having emissions from the Basic Oxygen Furnace Shop at the Mingo Junction Facility exceed twenty percent opacity on a three-minute block average, as described in this Claim for Relief, RG Steel Wheeling violated the Ohio Operating Permit, the Ohio SIP and the CAA.

80.     Unless restrained by an order of the Court, RG Steel Wheeling's violations of its Ohio Operating Permit, the Ohio SIP and the CAA, as set forth in this Claim for Relief, are likely to continue if production resumes at the Basic Oxygen Furnace at the Mingo Junction Facility.

81.     RG Steel Wheeling's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009.

## SECOND CLAIM FOR RELIEF

Against Defendant RG Steel Wheeling, LLC
(Particulate Emission Violations at BOF Scrubber Stack, Mingo Junction Facility)

82.     Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

83.     On numerous occasions between July 2004 and August 2008, including but not limited to those dates and times listed in Appendix B, visible emissions of particulate matter from the Basic Oxygen Furnace Scrubber Stack at the Mingo Junction Facility exceeded twenty percent opacity on a six-minute block average for more than six consecutive minutes.

84.     By having emissions from the Basic Oxygen Furnace Scrubber Stack at the Mingo Junction Facility exceed twenty percent opacity on a six-minute block average for more than six consecutive minutes, as described in this Claim for Relief, RG Steel Wheeling violated the Ohio Operating Permit, the Ohio SIP and the CAA.

27

85.     Unless restrained by an order of the Court, RG Steel Wheeling's violations of its Ohio Operating Permit, the Ohio SIP and the CAA, as set forth in this Claim for Relief, are likely to continue if production resumes at the Basic Oxygen Furnace at the Mingo Junction Facility.

86.     RG Steel Wheeling's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009.

### THIRD CLAIM FOR RELIEF

Against all Defendants
(Particulate Emission Violations at Coke Oven Batteries 1, 2, 3 & 8, Follansbee Facility)

87.     Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

88.     On numerous occasions during the past five years, including but not limited to those dates and times listed in Appendix C, emissions of smoke and/or particulate matter from combustion stacks at the Follansbee Facility exceeded twenty percent opacity for a period or periods aggregating more than five minutes in a sixty-minute period, or exceeded forty percent opacity.

89.     By having emissions from the coke oven combustion stacks at the Follansbee Facility exceed twenty percent opacity for more than five minutes in a sixty-minute period, or forty percent opacity at any time, as described in this Claim for Relief, Defendants violated the WV Operating Permit, the West Virginia SIP, the WV APCA and the CAA.

90.     Unless restrained by an order of the Court, Defendants' violations of the WV Operating Permit, the West Virginia SIP, the WV APCA and the CAA, as set forth in this Claim for Relief, are likely to continue.

91.     Defendants' violations of the CAA and the WV APCA, as set forth in this Claim for Relief, make them subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009, and of up to $37,500 per day for each such violation occurring on or after January 13, 2009.

## FOURTH CLAIM FOR RELIEF

Against Defendant RG Steel Wheeling, LLC
(Hydrogen Sulfide Concentration Violations, Mingo Junction Facility)

92.     Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

93.     On numerous occasions since July 2004, including at those dates and times listed in Appendix D, RG Steel Wheeling combusted by-product coke oven gas with an average hydrogen sulfide concentration greater than 50 grains per 100 dry standard cubic feet ("dscf") over a 12-hour period at one or more combustion sources at the Mingo Junction Facility.

94.     By combusting by-product coke oven gas with an average hydrogen sulfide concentration greater than 50 grains per 100 dscf over a 12-hour period at one or more combustion sources at the Mingo Junction Facility, as described in this Claim for Relief, RG Steel Wheeling violated the Ohio Operating Permit, the Ohio SIP and the CAA.

95.     Unless restrained by an order of the Court, RG Steel Wheeling's violations of the Ohio Operating Permit, the Ohio SIP and the CAA, as set forth in this Claim for Relief, are likely to continue.

96.     RG Steel Wheeling's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $32,500 per day for each violation occurring after

29

March 15, 2004 and before January 13, 2009, and of up to $37,500 per day for each such violation occurring on or after January 13, 2009.

## FIFTH CLAIM FOR RELIEF

Against all Defendants
(Hydrogen Sulfide Concentration Violations, Follansbee Facility)

97.     Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

98.     On numerous occasions during the past five years, including at those dates and times listed in Appendix E, Defendants combusted by-product coke oven gas with an average hydrogen sulfide concentration greater than 50 grains per 100 cubic feet of gas over a 3-hour period at one or more combustion sources at the Follansbee Facility.

99.     By combusting by-product coke oven gas with an average hydrogen sulfide concentration greater than 50 grains per 100 cubic feet of gas over a 3-hour period at one or more combustion sources at the Follansbee Facility, as described in this Claim for Relief, Defendants violated the WV Operating Permit, the West Virginia SIP, the WV APCA and the CAA.

100.     Unless restrained by an order of the Court, Defendants' violations of the WV Operating Permit, the West Virginia SIP, the WV APCA and the CAA, as set forth in this Claim for Relief, are likely to continue.

101.     Defendants' violations of the CAA and the WV APCA, as set forth in this Claim for Relief, make them subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009, and of up to $37,500 per day for each such violation occurring on or after January 13, 2009.

30

## SIXTH CLAIM FOR RELIEF

Against Defendant RG Steel Wheeling, LLC
(Particulate Emission Violations at Electric Arc Furnace, Mingo Junction Facility)

102.     Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

103.     On several occasions between July 2004 and August 2008, including but not limited to those dates and times listed in Appendix F, fugitive visible emissions of particulate matter from the Mingo Junction Facility's Electric Arc Furnace ("EAF") Shop exceeded zero percent opacity on a six-minute block average.

104.     By having emissions from the EAF exceed zero percent opacity on a six-minute block average, as described in this Claim for Relief, RG Steel Wheeling violated the Permit to Install, the Ohio SIP and the CAA.

105.     Unless restrained by an order of the Court, RG Steel Wheeling's violations of its Permit to Install, the Ohio SIP and the CAA, as set forth in this Claim for Relief, are likely to continue if production resumes at the EAF at the Mingo Junction Facility.

106.     RG Steel Wheeling's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009.

## SEVENTH CLAIM FOR RELIEF

Against Defendant RG Steel Wheeling, LLC
(ACO Work Practice Violations at Basic Oxygen Furnace, Mingo Junction Facility)

107.     Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

31

108.    On several occasions between November 6, 2004 and March 31, 2006, including at those dates and times listed in Appendix G, the duration of the initial hot metal charge of each heat into a BOF vessel at the Mingo Junction Facility was less than three minutes.

109.    On several occasions between November 6, 2004 and March 31, 2006, RG Steel Wheeling failed to monitor or record the duration of the initial hot metal charge of each heat at the Mingo Junction Facility.

110.    By having an initial hot metal charge of each heat into a BOF vessel of less than three minutes, as described in this Claim for Relief, RG Steel Wheeling violated Paragraph 18 of the ACO and the CAA.

111.    By failing to monitor or record the duration of the hot metal charge of each heat at the Mingo Junction Facility, as described in this Claim for Relief, RG Steel Wheeling violated Paragraph 19 of the ACO and the CAA.

112.    RG Steel Wheeling's violations of the CAA, as set forth in this Claim for Relief, make it subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009.

### EIGHTH CLAIM FOR RELIEF

Against all Defendants
(RCRA Subtitle C Violations Related to Coke Oven Gas Condensate, Follansbee Facility)

113.    Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

114.    Coke oven gas condensate forms in drain lines and pipelines that transport coke oven gas from the coke oven batteries at the Follansbee Facility throughout the Steubenville Complex. Coke oven gas condensate collects in and is stored in above-ground and underground

32

drip leg tanks at various places throughout the Follansbee Facility. Defendants periodically remove the coke oven gas condensate from drip leg tanks throughout the Steubenville Complex and transport the condensate by tanker truck to the Pit Sump at the Follansbee Facility. From the Pit Sump, the coke oven gas condensate is pumped into a Tar Decanter Sump at the Follansbee Facility. The drip leg tanks, the old block gas drips, Pit Sump and Tar Decanter Sump are "tanks" for purposes of WV CSR § 33-20-2.1 (incorporating by reference 40 C.F.R. § 260.10).

115.    The coke oven gas condensate generated at the Follansbee Facility is a solid waste that displays the toxicity characteristic for benzene. Solid wastes that display the toxicity characteristic for benzene are hazardous wastes under WV CSR § 33-20-3.1 (incorporating by reference 40 C.F.R. § 261.24 (characteristic waste D018)). Accordingly, coke oven gas condensate generated at various places within the Follansbee Facility is a "hazardous waste" within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 261.3) and RCRA Section 1004(5), 42 U.S.C. § 6903(5). The Follansbee Facility is a "hazardous waste management facility" within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. Part 265).

116.    Defendants are "generators" of hazardous waste through their process of transporting coke oven gas through pipelines, where it is cooled and condenses, and the resulting coke oven gas condensate is collected and stored in above-ground and underground drip leg tanks and sumps in West Virginia. WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 260.10). Defendants are "owners" and/or "operators" of a hazardous waste management facility within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 260.10).

33

117.    Defendants have routinely failed to manage coke oven gas condensate generated
at the Follansbee Facility in compliance with hazardous waste management regulations
promulgated by West Virginia and authorized by U.S. EPA.

118.    Defendants failed to determine whether coke oven gas condensate is a hazardous
waste, in violation of WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.11);

119.    During the past five years, Defendants have failed to manage coke oven gas
condensate as a hazardous waste and, in doing so, have routinely violated the West Virginia
Hazardous Waste Management Program, including, but not limited to, the following specific
requirements:

a.    Defendants failed to qualify for the exemption from the RCRA permit
requirement for generators of hazardous waste set forth at WV CSR § 33-20-5.1 (incorporating
by reference 40 C.F.R. § 262.34(a)) for generators who temporarily store hazardous waste on site
by storing hazardous waste on site for greater than 90 days, by failing to label tanks of coke oven
gas condensate with the words "hazardous waste" as required by WV CSR § 33-20-5.1
(incorporating by reference 40 C.F.R. § 262.34(a)(3)), and by storing hazardous waste on site for
90 days or less without complying with the storage and containment requirements set forth in
WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.34(a)).  By failing to meet the
requirements necessary for an exemption from the RCRA permit requirement for hazardous
waste generators who temporarily store their hazardous waste on-site, Defendants were required
to obtain a permit to treat, store or dispose of hazardous waste at the Follansbee Facility, as
described in this Claim for Relief (i.e., to operate a hazardous waste storage, treatment or
disposal facility).  Defendants do not and, at all times relevant to this Complaint, have not had a

permit to operate a hazardous waste storage, treatment or disposal facility, in violation of WV CSR § 33-20-11 (incorporating by reference 40 C.F.R. § 270.1(b));

      b.     Defendants' above-ground drip leg tanks that store coke oven gas condensate at the Follansbee Facility are not labeled as containing hazardous waste, in violation of WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.34(a)(3));

      c.     Defendants failed to ensure that all above-ground and underground drip leg tanks, the old block gas drips, Pit Sump and Tar Decanter Sump at the Follansbee Facility that store coke oven gas condensate are equipped with secondary containment, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.193);

      d.     Defendants failed to obtain an assessment from a certified, independent professional engineer for each new and existing tank that stores coke oven gas condensate at the Follansbee Facility, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.191 and .192);

      e.     Defendants failed to equip each tank that stores coke oven gas condensate with a leak detection system and to perform leak detection on such tanks, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.193(c)(3));

      f.     Defendants failed to maintain and operate the Follansbee Facility so as to minimize the possibility of any unplanned sudden or non-sudden release of coke oven gas condensate, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.31);

g.      Defendants failed to conduct and maintain records of daily tank inspections of all tanks that store coke oven gas condensate, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.195);

h.      Defendants failed to have hazardous waste transporter identification numbers for their shipments of hazardous waste from Steubenville and Mingo Junction to Follansbee and failed to prepare manifests for transporting the coke oven gas condensate for offsite treatment, storage or disposal, in violation of WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.20); and

i.      Defendants failed to prepare a written closure plan, to prepare a detailed written estimate of the cost of closing the Follansbee Facility and to have financial assurance for any closure, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.112, .142, .143 and .197).

120.    Unless restrained by an order of the Court, Defendants' violations of the West Virginia Hazardous Waste Management Program and the corresponding West Virginia regulations, as set forth in this Claim for Relief, are likely to continue.  The United States and the State of West Virginia seek to have Defendants enjoined to take action pursuant to 42 U.S.C. § 6928(a) and to prevent further violations of RCRA and the West Virginia Hazardous Waste Management Program.

121.    Defendants' violations of the West Virginia Hazardous Waste Management Program, as set forth in this Claim for Relief, make Defendants subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009, and of up to $37,500 per day for each such violation occurring on or after January 13, 2009.

## NINTH CLAIM FOR RELIEF

Against Defendant RG Steel Wheeling, LLC
(RCRA Subtitle C Violations Related to Coke Oven Gas Condensate, Ohio Facilities)

122.   Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

123.   Coke oven gas condensate forms in drain lines and pipelines that transport coke oven gas from the coke oven batteries at the Follansbee Facility throughout the Steubenville Complex. Coke oven gas condensate collects in above-ground and underground drip leg storage tanks at various places throughout the Steubenville and Mingo Junction Facilities. RG Steel Wheeling periodically removed, and continues to remove, coke oven gas condensate from drip leg tanks throughout the Steubenville and Mingo Junction Facilities and transport the condensate by tanker truck to the Pit Sump at the Follansbee Facility. The drip leg tanks at the Steubenville and Mingo Junction Facilities are "tanks" for purposes of OAC Rule 3745-50-10(A)(121).

124.   The coke oven gas condensate generated at the Steubenville and Mingo Junction Facilities is a solid waste that displays the toxicity characteristic for benzene. Solid wastes that display the toxicity characteristic for benzene are hazardous wastes under OAC 3745-51-24 (characteristic waste D018)). Accordingly, coke oven gas condensate generated at various places within the Steubenville and Mingo Junction Facilities is a "hazardous waste" within the meaning of OAC Rule 3745-51-03, and RCRA Section 1004(5), 42 U.S.C. § 6903(5). The Steubenville and Mingo Junction Facilities are "hazardous waste management facilities" within the meaning of OAC Chapter 3745-66.

125.   RG Steel Wheeling operates facilities in Ohio at which coke oven gas condensate forms in drain lines and pipelines and is collected in above-ground and underground drip leg

tanks is generated. Accordingly, RG Steel Wheeling is a "generator" of hazardous wastes within

the meaning of OAC Rule 3745-50-10(51). RG Steel Wheeling is an "owner" and "operator" of

a hazardous waste management facility within the meaning of OAC Rule 3745-50-10(90) & (91).

126.    RG Steel Wheeling has routinely failed to manage coke oven gas condensate

generated at the Steubenville and Mingo Junction Facilities in compliance with hazardous waste

management regulations promulgated by Ohio and authorized by U.S. EPA.

127.    RG Steel Wheeling has failed to determine whether coke oven gas condensate, a

solid waste, is a hazardous waste, in violation of OAC Rule 3745-52-11.

128.    During the past five years, RG Steel Wheeling has failed to manage coke oven gas

condensate as a hazardous waste and, in doing so, has routinely violated the Ohio Hazardous

Waste Management Program, including, but not limited to, the following specific requirements:

a.    RG Steel Wheeling failed to qualify for the exemption from the RCRA

permit requirement for generators of hazardous waste set forth at OAC Rule 3745-52-34(A), by

storing hazardous waste on site for greater than 90 days and by failing to label tanks of coke oven

gas condensate with the words "hazardous waste" as required by OAC Rule 3745-52-34(A)(3).

By failing to meet the requirements necessary to obtain an exemption from the RCRA permit

requirement for hazardous waste generators who temporarily store such hazardous waste on-site,

RG Steel Wheeling was required to obtain a permit to treat, store or dispose of such hazardous

waste at the Ohio facilities (i.e., a hazardous waste storage, treatment or disposal facility).  RG

Steel Wheeling does not possess and, at all times relevant to this Complaint, has not possessed, a

permit to operate a hazardous waste storage, treatment or disposal facility, in violation of OAC

Rule 3745-50-11(A)(15) (incorporating by reference 40 C.F.R. § 270.1(b));

38

b.     RG Steel Wheeling has not labeled the above-ground drip leg tanks used to store coke oven gas condensate at the Steubenville and Mingo Junction Facilities as containing hazardous waste, in violation of OAC Rule 3745-52-34(a)(3);

c.     RG Steel Wheeling failed to insure that all of the above-ground and underground drip leg tanks that store coke oven gas condensate at the Steubenville and Mingo Junction Facilities are equipped with secondary containment, in violation of OAC Rule 3745-66-93;

d.     RG Steel Wheeling failed to obtain an assessment from a certified, independent professional engineer for each new and existing tank that stores coke oven gas condensate at the Steubenville and Mingo Junction Facilities, in violation of OAC Rule 3745-66-91;

e.     RG Steel Wheeling failed to equip each tank that stores coke oven gas condensate at the Steubenville and Mingo Junction Facilities with a leak detection system and perform leak detection on each such tank, in violation of OAC Rule 3745-66-93;

f.     RG Steel Wheeling failed to maintain and operate the Steubenville and Mingo Junction Facilities so as to minimize the possibility of any unplanned sudden or non-sudden release of coke oven gas condensate, in violation of OAC Rule 3745-65-31;

g.     RG Steel Wheeling failed to conduct and maintain records of daily tank inspections of all tanks that store coke oven gas condensate, in violation of OAC Rule 3745-66-95;

h.     RG Steel Wheeling failed to have U.S. EPA identification numbers for its shipments of hazardous waste from Steubenville and Mingo Junction to Follansbee and failed to

prepare manifests for transporting the coke oven gas condensate for offsite treatment, storage or disposal, in violation of OAC Rule 3745-52-20; and

       i.    RG Steel Wheeling failed to prepare a written closure plan and a detailed written estimate of the cost of closing the Steubenville and Mingo Junction Facilities and failed to have financial assurance for any closure, in violation of OAC Rules 3745-66-12, 3745-66-42, 3745-66-43 and 3745-66-97.

129.    Unless restrained by an order of the Court, RG Steel Wheeling's violations of the Ohio Hazardous Waste Management Program and the corresponding Ohio regulations, as set forth in this Claim for Relief, are likely to continue.  The United States seeks to have RG Steel Wheeling enjoined to take action pursuant to 42 U.S.C. § 6928(a) and to prevent further violations of RCRA and the Ohio Hazardous Waste Management Program.

130.    RG Steel Wheeling's violations of the Ohio Hazardous Waste Management Program, as set forth in this Claim for Relief, make RG Steel Wheeling subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009, and of up to $37,500 per day for each such violation occurring on or after January 13, 2009.

### TENTH CLAIM FOR RELIEF

Against all Defendants
(RCRA Subtitle C Violations Related to Muck Oil Storage at the Follansbee Facility)

131.    Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

132.    Muck oil (sometimes referred to as "purifier oil") is a process residue from the recovery of light oil, including, but not limited to, oils generated in stills, decanters, and wash oil

recovery units from the recovery of coke by-products produced from coal. Muck oil is a "solid waste" and a listed RCRA hazardous waste, pursuant to WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 261.2 and .32 (K143)). Accordingly, muck oil is a "hazardous waste" within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 261.3) and RCRA Section 1004(5), 42 U.S.C. § 6903(5).

133.   Defendants own and/or operate the Follansbee Facility at which muck oil is generated or has been generated. Defendants are "generators" of hazardous waste within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 260.10).

134.   Defendants have routinely failed to manage muck oil at the Follansbee Facility in compliance with hazardous waste management regulations promulgated by the State of West Virginia.

135.   During the past five years, Defendants have routinely violated the West Virginia Hazardous Waste Management Program in relation to the storage of muck oil, including, but not limited to, the following specific requirements:

a.   Defendants failed to qualify for the exemption from the RCRA permit requirement for generators of hazardous waste who temporarily store such hazardous waste as set forth at WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.34(a)) by storing hazardous waste on site for greater than 90 days and by failing to label a tank of muck oil with the words "hazardous waste" as required by WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.34(a)(3)). By failing to meet the requirements necessary to obtain an exemption from the RCRA permit requirement for hazardous waste generators who temporarily store, such hazardous waste on-site, Defendants were required to obtain a permit to treat, store or dispose of

41

such hazardous waste on-site (i.e., to operate a hazardous waste storage, treatment or disposal facility). Defendants do not and, at all times relevant to this Complaint, have not had a permit to operate a hazardous waste storage, treatment or disposal facility, in violation of WV CSR § 33-20-11 (incorporating by reference 40 C.F.R. § 270.1(b));

b.     Defendants failed to provide secondary containment free of cracks or gaps for the tank at the Follansbee Facility used to store muck oil, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.193); and

c.     Defendants failed to conduct and maintain records of daily tank inspections of all tanks used to store muck oil, in violation of WV CSR § 33-20-7.2 (incorporating by reference 40 C.F.R. § 265.195).

136.    Unless restrained by an order of the Court, Defendants' violations of the West Virginia Hazardous Waste Management Program and the corresponding West Virginia regulations, as set forth in this Claim for Relief, are likely to continue.

137.    Defendants' violations of the West Virginia Hazardous Waste Management Program, as set forth in this Claim for Relief, make Defendants subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009, and of up to $37,500 per day for each such violation occurring on or after January 13, 2009.

## ELEVENTH CLAIM FOR RELIEF

Against all Defendants
(RCRA Subtitle C Violations Related to Roll-Off Trailers at the Laydown Yard at
the Follansbee Facility)

138.    Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

139.    Defendants collect solid wastes generated from various sources within the Steubenville Complex in roll-off trailers that are stored at a laydown yard at the Follansbee Facility.  The roll-off trailers are "containers" within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 260.10).

140.    The wastes stored in the roll-off trailers are not identified by source or type.  The source of some of the solid wastes stored in these roll-off trailers indicates that they may be a "hazardous waste" within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 261.3) and RCRA Section 1004(5), 42 U.S.C. § 6903(5).

141.    At least eight roll-off containers identified as containing hazardous waste, which had been stored for over 90 days, were shipped off-site from this laydown yard at the Follansbee Facility between January 2004 and November 2007.  To the extent that the wastes collected within the Steubenville Complex in roll-off trailers are or were hazardous wastes, Defendants are "generators" of hazardous waste within the meaning of WV CSR § 33-20-2.1.a (incorporating by reference 40 C.F.R. § 260.10).

142.    Defendants have routinely failed to sample, track and otherwise manage the solid wastes stored in roll-off trailers at the laydown yard at the Follansbee Facility in compliance with hazardous waste management regulations promulgated by the State of West Virginia and approved by U.S. EPA.

143.    During the past five years, Defendants have routinely violated the West Virginia Hazardous Waste Management Program in relation to the storage of solid wastes and/or hazardous wastes in roll-off trailers, including, but not limited to, the following specific requirements:

43

a.    Defendants failed to determine whether the solid wastes generated throughout the Steubenville Complex and stored in the roll-off trailers at the Follansbee Facility are hazardous wastes, in violation of WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.11); and

b.    Defendants failed to mark containers of hazardous wastes with an accumulation start date, in violation of WV CSR § 33-20-5.1 (incorporating by reference 40 C.F.R. § 262.34(a)(2)).

144.    Unless restrained by an order of the Court, Defendants' violations of the West Virginia Hazardous Waste Management Program and the corresponding West Virginia regulations, as set forth in this Claim for Relief, are likely to continue.

145.    Defendants' violations of the West Virginia Hazardous Waste Management Program, as set forth in this Claim for Relief, make Defendants subject to civil penalties of up to $32,500 per day for each violation occurring after March 15, 2004 and before January 13, 2009, and of up to $37,500 per day for each such violation occurring on or after January 13, 2009.

## TWELFTH CLAIM FOR RELIEF

Against all Defendants
(RCRA Subtitle I Violations at Various Underground Storage Tanks
Follansbee Facility)

146.    Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

147.    The coke oven gas condensate generated at the Follansbee Facility contains benzene. As such, coke oven gas condensate is a "hazardous substance" and a "regulated substance" within the meaning of WV CSR § 33-30-2.1 (incorporating by reference 40 C.F.R. § 280.12), RCRA Section 9001(1)(B)(7).

148.    Coke oven gas condensate collects in and is stored in above-ground and underground drip leg tanks, the old block gas drips, the Pit Sump and the Tar Decanter Sump, all of which are "tanks" for purposes of WV CSR § 33-20-2.1 (incorporating by reference 40 C.F.R. § 280.12).  Some of these tanks, which are ten percent or more below the surface of the ground, are "underground storage tanks" or "USTs" within the meaning of WV CSR § 33-20-2.1 (incorporating by reference 40 C.F.R. § 280.12).

149.    The underground storage tanks at the Follansbee Facility that contain coke oven gas condensate, together with any associated piping that is in contact with the ground, are "hazardous substance UST systems" within the meaning of  WV CSR § 33-30-2.1 (incorporating by reference 40 C.F.R. § 280.12).  Some or all of the hazardous substance UST systems are "existing tank systems" and some may be "new tank systems" within the meaning of WV CSR § 33-30-2.1 (incorporating by reference 40 C.F.R. § 280.12).

150.    Some or all of the underground storage tank systems at the Follansbee Facility have been used and/or continue to be used to store hazardous substances and have not been "empty" within the meaning of WV CSR § 33-30-2.1 (incorporating by reference 40 C.F.R. § 280.70(a)).

151.    Defendants are "persons" and "owners" and/or "operators" of underground storage tanks and underground storage tank systems within the meaning of WV CSR § 33-30-2.1 (incorporating by reference 40 C.F.R. § 280.12).

152.    During the past five years, Defendants have routinely conveyed and stored coke oven gas condensate in underground piping and underground storage tanks at the Follansbee Facility that do not comply with the underground storage tank program regulations promulgated

45

by the State of West Virginia and approved by U.S. EPA, including, but not limited to, the
following specific requirements:

      a.      Defendants' existing hazardous substance UST systems, and any new
hazardous substance UST systems, at the Follansbee Facility do not have internal liners nor are
they equipped with cathodic protection, in violation of WV CSR § 33-30-2.2.1 (incorporating by
reference 40 C.F.R. § 280.20(a) and 21(b)).

      b.      Defendants' existing UST systems, and any new UST systems, at the
Follansbee Facility do not have a method or combination of methods of release detection
monitoring, in violation of WV CSR § 33-30-2.2.1 (incorporating by reference 40 C.F.R.
§ 280.40(a) and (c)).

      c.      Defendants' underground piping that routinely conveys coke oven gas
condensate under pressure at the Follansbee Facility does not have an automatic line leak
detection system, in violation of WV CSR § 33-30-2.2.1 (incorporating by reference 40 C.F.R.
§§ 280.42(b)(4) and 280.44(a)).

      d.      Defendants' underground piping that conveys coke oven gas condensate at
the Follansbee Facility is not equipped with secondary containment, in violation of WV CSR
§ 33-30-2.2.1 (incorporating by reference 40 C.F.R. §§ 280.42(b)(4)).

      e.      Defendants' hazardous substance UST systems at the Follansbee Facility
do not have secondary containment systems designed, constructed and installed to contain any
regulated substances released from the tank system until detected and removed, do not prevent
the migration of regulated substances into the environment at any time during the operational life

of the tank, and are not checked for evidence of a release of regulated substances every thirty days, in violation of WV CSR § 33-30-2.1 (incorporating by reference 40 C.F.R. § 280.42); and

      f.     Defendants do not monitor transfer operations from the hazardous substance USTs at the Follansbee Facility so as to avoid spilling and do not report, investigate and clean up any such spills, in violation of WV CSR § 33-30-2.1 (incorporating by reference 40 C.F.R. § 280.30).

153.    Unless restrained by an order of the Court, Defendants' violations of the West Virginia Underground Storage Tank Program and the corresponding West Virginia regulations, as set forth in this Claim for Relief, are likely to continue.

154.    Defendants' violations of the West Virginia Underground Storage Tank Program, as set forth in this Claim for Relief, make Defendants subject to civil penalties not to exceed $11,000 per tank per day for each such violation occurring after March 15, 2004 and before January 13, 2009, and not to exceed $16,000 per tank per day for each such violation occurring on or after January 13, 2009.

### THIRTEENTH CLAIM FOR RELIEF

Against Defendant RG Steel Wheeling, LLC<br>
(RCRA Subtitle I Violations at Various Underground Storage Tanks<br>
Steubenville and Mingo Junction Facilities)

155.    Paragraphs 1 through 76 above are re-alleged as if fully set forth herein.

156.    The coke oven gas condensate generated at the Mingo Junction and Steubenville Facilities contains benzene. As such, coke oven gas condensate is a "hazardous substance" and a "regulated substance" within the meaning of 40 C.F.R. § 280.12 and RCRA Section 9001(1)(B)(7).

47

157.   Coke oven gas condensate collects in and is stored in above-ground and underground drip leg tanks, all of which are "tanks" for purposes of 40 C.F.R. § 280.12.  Some of these tanks, which are ten percent or more below the surface of the ground, are "underground storage tanks" or "USTs" within the meaning of 40 C.F.R. § 280.12.

158.   The underground storage tanks at the  Mingo Junction and Steubenville Facilities that contain coke oven gas condensate, together with any associated piping that is in contact with the ground, are "hazardous substance UST systems" within the meaning of 40 C.F.R. § 280.12.  Some or all of the hazardous substance UST systems are "existing tank systems" and some may be "new tank systems" within the meaning of 40 C.F.R. § 280.12.

159.   Some or all of the underground storage tank systems at the  Mingo Junction and Steubenville Facilities have been used and/or continue to be used to store hazardous substances and have not been "empty" within the meaning of 40 C.F.R. § 280.70(a).

160.   RG Steel Wheeling is a "person" and an "owner" and "operator" of underground storage tanks and underground storage tank systems within the meaning of 40 C.F.R. § 280.12.

161.   During the past five years, RG Steel Wheeling has routinely conveyed and stored coke oven gas condensate in underground piping and underground storage tanks at the Mingo Junction and Steubenville Facilities that do not comply with the underground storage tank program regulations promulgated by U.S. EPA, including, but not limited to, the following specific requirements:

a.     RG Steel Wheeling's existing hazardous substance UST systems, and any new hazardous substance UST systems, at the Mingo Junction and Steubenville Facilities do not

have internal liners nor are they equipped with cathodic protection, in violation of 40 C.F.R.

§ 280.20(a) and 21(b).

      b.    RG Steel Wheeling's existing UST systems, and any new UST systems, at

the Mingo Junction and Steubenville Facilities do not have a method or combination of methods

of release detection monitoring, in violation of 40 C.F.R. § 280.40(a) and (c).

      c.    RG Steel Wheeling's underground piping that routinely conveys coke

oven gas condensate under pressure at the Mingo Junction and Steubenville Facilities does not

have an automatic line leak detection system, in violation of 40 C.F.R. §§ 280.42(b)(4) and

280.44(a).

      d.    RG Steel Wheeling's underground piping that conveys coke oven gas

condensate at the Mingo Junction and Steubenville Facilities is not equipped with secondary

containment, in violation of 40 C.F.R. §§ 280.42(b)(4).

      e.    RG Steel Wheeling's hazardous substance UST systems at the  Mingo

Junction and Steubenville Facilities do not have secondary containment systems designed,

constructed and installed to contain any regulated substances released from the tank system until

detected and removed, do not prevent the migration of regulated substances into the environment

at any time during the operational life of the tank, and are not checked for evidence of a release

of regulated substances every thirty days, in violation of WV CSR § 33-30-2.1 (incorporating by

reference 40 C.F.R. § 280.42); and

      f.    RG Steel Wheeling does not monitor transfer operations from the

hazardous substance USTs at the Mingo Junction and Steubenville Facilities so as to avoid

spilling and does not report, investigate and clean up any such spills, in violation of 40 C.F.R. § 280.30.

162.    Unless restrained by an order of the Court, RG Steel Wheeling's violations of RCRA Subtitle I and the corresponding U.S. EPA Underground Storage Tank regulations, as set forth in this Claim for Relief, are likely to continue.

163.    RG Steel Wheeling's violations of RCRA Subtitle I, as set forth in this Claim for Relief, make it subject to civil penalties not to exceed $11,000 per tank per day for each such violation occurring after March 15, 2004 and before January 13, 2009, and not to exceed $16,000 per tank per day for each such violation occurring on or after January 13, 2009.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

A.    Permanently enjoin RG Steel Wheeling from further violations of the CAA, and applicable requirements established thereunder, including the Ohio SIP Rules, the ACO, and its Title V and PTI permit provisions described above in relation to the Mingo Junction Facility as alleged in the First, Second, Fourth, Sixth and Seventh Claims for Relief in this Complaint;

B.    Require RG Steel Wheeling to obtain and comply with all necessary permits and to undertake and complete expeditiously all actions necessary to achieve and maintain compliance with the CAA, and applicable requirements established thereunder, including the Ohio SIP Rules, the ACO and its Title V permit provisions described above as it relates to the Mingo Junction Facility as alleged in the First, Second, Fourth, Sixth and Seventh Claims for Relief in this Complaint;

C.      Assess civil penalties against RG Steel Wheeling for violations of the Clean Air

Act as well as its implementing regulations and permits issued thereunder as alleged in the First,

Second, Fourth, and Sixth Claims for Relief in this Complaint;

D.      Assess civil penalties against RG Steel Wheeling for violations of the ACO as

alleged in the Seventh Claim for Relief in this Complaint;

E.      (1)      To ensure compliance with RCRA Subtitle C and the Ohio Hazardous

                 Waste Management Program, order RG Steel Wheeling to:  (a) conduct a

                 detailed analysis of coke oven gas condensate and manage it as a

                 hazardous waste; (b) review all pipes conveying and tanks storing coke

                 oven gas condensate at its Steubenville and Mingo Junction Facilities to

                 determine all regulations applicable to its hazardous waste tank

                 management operations, notify U.S. EPA and Ohio EPA regarding its

                 findings, implement changes based on these findings, and certify

                 compliance with applicable regulations; (c) certify to U.S. EPA and Ohio

                 EPA that coke oven gas condensate is being managed as a hazardous

                 waste; and (d) to prevent further violations of the Ohio Hazardous Waste

                 Management Program;

        (2)      If the Court finds that coke oven gas condensate is not a "hazardous

                 waste," then in the alternative, to ensure compliance with RCRA

                 Subtitle I, order RG Steel Wheeling to review all pipes conveying and

                 tanks storing coke oven gas condensate at its Steubenville and Mingo

                 Junction Facilities to determine all regulations applicable to its hazardous

51

substance underground storage tank systems, notify U.S. EPA regarding its

findings, implement changes based on these findings, and certify

compliance with all applicable RCRA Subtitle I regulations; and

F.    Assess civil penalties against RG Steel Wheeling for violations of RCRA Subtitle

C as well as its implementing regulations as alleged in the Ninth Claim for Relief in this

Complaint, or, in the alternative if the Court finds that coke oven gas condensate is not a

"hazardous waste," then assess civil penalties against RG Steel Wheeling for violations of RCRA

Subtitle I as well as its implementing regulations as alleged in the Thirteenth Claim for Relief in

this Complaint.

AND WHEREFORE, Plaintiffs, the United States of America and the State of West

Virginia, respectfully request that this Court::

G.    Permanently enjoin Defendants from further violations of the CAA, the WV

APCA, and applicable requirements established thereunder, including the West Virginia SIP

Rules and their Title V permit provisions described above in relation to the Follansbee Facility as

alleged in the Third and Fifth Claims for Relief in this Complaint;

H.    Require Defendants to obtain and comply with all necessary permits and to

undertake and complete expeditiously all actions necessary to achieve and maintain compliance

with the CAA, the WV APCA, and applicable requirements established thereunder, including the

West Virginia SIP Rules and their Title V permits described above in relation to the Follansbee

Facility as alleged in the Third and Fifth Claims for Relief in this Complaint;

I.    Assess civil penalties against Defendants for violations of the Clean Air Act, the

WV APCA and the respective implementing regulations and permits issued thereunder in

52

relation to the Follansbee Facility as alleged in the Third and Fifth Claims for Relief in this Complaint;

J.    (1)    To ensure compliance with the West Virginia Hazardous Waste Management Act in relation to the Follansbee Facility as alleged in the Eighth Claim for Relief in this Complaint, order Defendants to: (a) conduct a detailed analysis of coke oven gas condensate and manage it as a hazardous waste; (b) review all pipes conveying and tanks storing coke oven gas condensate at its Follansbee Facility to determine all regulations applicable to its hazardous waste tank management operations, notify U.S. EPA and WV DEP regarding its findings, implement changes based on these findings, and certify compliance with applicable regulations; (c) certify to U.S. EPA and WV DEP that coke oven gas condensate is being managed as a hazardous waste; and (d) to prevent further violations of the West Virginia Hazardous Waste Management Act;

      (2)    If the Court finds that coke oven gas condensate is not a "hazardous waste," then in the alternative, to ensure compliance with the WV underground storage tank regulations in relation to the Follansbee Facility as alleged in the Twelfth Claim for Relief in this Complaint, order Defendants to review all pipes conveying and tanks storing coke oven gas condensate at its Follansbee Facility to determine all regulations applicable to its hazardous substance underground storage tank systems, notify U.S.

EPA and WV DEP regarding its findings, implement changes based on these findings, and certify compliance with all applicable WV underground storage tank regulations;

K.      Assess civil penalties against Defendants for violations of the West Virginia Hazardous Waste Management Act as well as its implementing regulations as alleged in the Eighth Claim for Relief in this Complaint, or, in the alternative if the Court finds that coke oven gas condensate is not a "hazardous waste," then assess civil penalties against Defendants for violations of the WV underground storage tank regulations as alleged in the Twelfth Claim for Relief in this Complaint;

L.      To ensure compliance with the West Virginia Hazardous Waste Management Act as alleged in the Tenth and Eleventh Claims for Relief in this Complaint, order Defendants to: (a) certify to U.S. EPA and WV DEP that it no longer generates or stores muck oil at the Follansbee Facility or, if it does, that it will properly manage and dispose of the muck oil as a hazardous waste; and (b) certify to U.S. EPA and WV DEP that it is identifying and managing wastes collected in roll-off trailers at the Follansbee Facility in compliance with the West Virginia Hazardous Waste Management Act to prevent further violations;

M.      Assess civil penalties against Defendants for violations of WV HWMA as well as its implementing regulations as alleged in the Tenth and Eleventh Claims for Relief in this Complaint; and

N.      Grant Plaintiffs such other relief as the Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


MICHAEL J. ZOELLER (DC Bar No. 426476)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 305-1473
michael.zoeller@usdoj.gov

WILLIAM J. IHLENFELD, II
United States Attorney


HELEN ALTMEYER
Assistant United States Attorney
1125 Chapline Street, Suite 3000
Wheeling, WV  26003
Tel: (304) 234-7763
Fax: (304) 469-2200

OF COUNSEL:
THOMAS M. WILLIAMS
Associate Regional Counsel
U.S. EPA Region 5 (C-14J)
77 West Jackson Blvd.
Chicago, IL  60604-3590
(312) 886-0814
and
JOYCE A. HOWELL
DANIEL BOEHMCKE
Senior Assistant Regional Counsel
U.S. EPA Region 3 (3RC30)
1650 Arch Street
Philadelphia, PA 19103-2029

THE WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION

ON BEHALF OF THE STATE OF WEST VIRGINIA


Jennifer L. Hughes (WV Bar No. 9676)
Senior Counsel
Office of Legal Services
WV Dept. of Environmental Protection
601 57th Street S.E.
Charleston, WV 25304
Phone: (304) 926-0460
Fax: (304) 926-0461
Jennifer.L.Hughes@wv.gov